PETITION UNDER 28 U.S.C. §2254 FOR A WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

In the
UNITED STATES OF THE
EASTERN DISTRICT OF NEW YORK

_·_

CALVIN LEE,

CV16-07158

Petitioner

v.

AMON, J.

MICHAEL CAPRA, Superintendent,
Sing Sing Correction & Community Supervision,

Respondent.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*


<> <> <> <> <> <> <> <> <> <> <> <> <> <> <> <> <> <> <> <> <> <> <>

CALVIN LEE'S PETITION PURSUANT TO
28 U.S.C. §2254 GATEWAY HEARING FOR
A WRIT OF HABEAS CORPUS

<> <> <> <> <> <> <> <> <> <> <> <> <> <> <> <> <> <> <> <> <> <> <>


Mr. Calvin Lee
Appearing Pro Se
Sing Sing Corr. Fac.
354 Hunter Street
Ossining, NY 10562

_·_

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------X
                                   :
CALVIN LEE,                        :
                                   :
                   Petitioner,     :          PETITION
                                   :
        -against-                  :          ___ Civ. ___
                                   :
MICHAEL CAPRA, Superintendent,     :
Sing Sing Correctional Facility,   :
                                   :
                   Respondent.     :
                                   :
----------------------------------X

PETITION UNDER 28 U.S.C. §2254 FOR A WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY

To Honorable Judge of the United States District Court of the Eastern District of New York:

Preliminary explanation: The allegation in this petition are in the form dictated by the Model form for use in application for **habeas corpus** relief encoded by 28 U.S.C. §2254 Cases in the United States District Court.

### HISTORY OF PROCEEDING

Paragraph 1 through 27 states the history of the state courts proceeding and discussion, paragraph 28 through 31 states federal constitutional claims and paragraph 32 through 33 contains required technical information.

Accordingly, for the stated reasons in the attached petition the requested relief should be GRANTED.

**PETITION**

## I.   Introduction

1. This is a gateway application pursuant to a claim of actual innocence. See, **Stephenson v. Connecticut**, __ Fed. Appx. __, 2016 WL 730502 at *2 n.2 (2nd Cir. Fed. 24, 2016).

2. The factual predicate arose during the invitation by the Kings County District Attorney's Conviction Review Unit ("CRU") reinvestigation police misconduct by embattled Detective Louis Scarcella, as well known to CRU was living, in effect, a double life as an imposter.  Neither the CRU disclosed this favorable material to trial nor appellate counsel 31 years earlier with a likelihood of success a wrongful conviction was obtained at trial and on direct appeal authorize requested relief.

3. The information came to light when former (now deceased) District Attorney Kenneth Thompson ran a successful election campaign against former D.A. Charles Hynes in 2013.  Former DA Hynes spoke to the press that he will be reviewing 50 murder cases involving Detective Louis Scarcella's unconstitutional practices and legitimacy of those convictions.*  Petitioner's case is indeed among the pending CRU's reinvestigation involving a false confessions and fictitious informers attributed to Petitioner's arrest and conviction was wrongfully obtained (attached and marked as Exhibit A).

---

* **Buckley v. Fletcher**, 509 U.S. at 277-78 (1993).

4.   Even  assuming  *arguendo*  neither  trial  nor  appellate counsel was aware of Detective Scarcella's reproduction of false confessions  in  other  defendant's  cases  that  would  have  cast substantial doubt on Petitioner's alleged statement which parrot significantly the same in content, does not fundamentally alter Petitioner's right to effective assistant of trial and derivative effective  of  appellate  counsel  during  a  critical  stage  of  the proceeding  raise  a  cognizable  federal  claim  of  relief.   See, **Palacios v. Burge**, 589 F.3d 556, 566 (2nd Cir. 2009) (petitioner must show a colorable 4th amendment claim offends some principle of fundamental fairness); **United States v. Freeman**, 735 F.3d 92 (2nd  Cir.  2013)  (Second  Circuit  case  study  jurisprudence  on unreliable anonymous tips).   Framed accordingly, when the State failed   to   disclose   Detective   Scarella's   "corruptive investigative" practice known to CRU for 31 years is inexplicable vacatur through an evidentiary gateway exploration hearing may pave the way vindicating Petitioner's actual innocence.   See e.g. **Hyman v. Brown**, ___ F.Supp.2d ___, 2016 WL 3866549 (E.D. N.Y. July 13, 2016).

5.  Accordingly,  the  factual  predicate  is  equitable  tolled from 2016 (attached and marked as Exhibit A).

### SUBSEQUENT PROCEDURAL HISTORY

6.  By  a  Kings  County  Indictment  Number  2183/86,  charged Petitioner  with  Murder  in  the  Second  Degree  (Penal  Law §125.25[1]) and related Weapon Possession Offenses.   Petitioner was sentenced to a term of 25 years to life respective (Egitto, J., at hearing, trial and sentence).

7. Petitioner plead not guilty on all counts.

8. Trial was before a jury, Petitioner did not testify at trial.

9. Petitioner's procedural history spans some 31 decades of litigation with no success. On appeal, Petitioner raised several substantive grounds seeking to overturn the conviction. In a decision and order dated the 13th day of November, 1989, the Appellate Division affirmed the conviction. See, **People v. Lee**, 155 A.D.2d 556 (2nd Dep't 19890, **lv. den.** 75 N.Y.2d 814 (1990).

10. On April 16, 1997, Petitioner filed a writ of error **coram nobis**. On the 17th day of August, 1998, the Appellate Division denied error **coram nobis** relief. **People v. Lee**, 244 A.D.2d 505 (2nd Dep't 1997).

11. On the 12th day of December, 1997, Petitioner move to vacate the judgment arguing, **inter alia**, several grounds for relief. By a decision and order dated the 9th day of March, 1998, the lower court denied 440. relief, **lv. den.**, **People v. Lee** , __ Misc.2d __ 98-03923 (2nd Dep't 1998).

12. Through counsel, Petitioner moved to vacate the judgment. By a decision and order dated the 23rd day of October, 2000, the lower court denied 440. relief **lv. den**, **People v. Lee**, __ Misc.2d __, No. 2000-11610 (2nd Dep't 2001).

13. Petitioner turned to the federal court on May 27, 2003. The district court denied habeas corpus relief. **Lee v. Walker**, 97 Civ. 4548 (CBA) (E.D.N.Y. 2003). The Second Circuit denied leave to appeal **Lee v. Walker**, 04-331 (2nd Cir. 2004).

14. Petitioner again attacked the sentence via C.P.L. 440.20. In a decision and order dated the 25th day of June, 2004, the lower court denied 440.20 relief.

15. Through counsel again, Petitioner attacked the judgment and conviction via C.P.L. §440.10 with no success. On the 16th day of September, 2009, the Appellate Division affirmed the conviction. See, **People v. Lee**, Slip Op. 66591(U). (2nd Dep't 2009).

16. As demonstrated above, the CRU failed to provide an explanation to any state or federal court by virtue of its deliberate failure to discharging its obligation under Brady that elapsed for 31 years that in its own right is extraordinary, and at best fundamentally irregular invaliding a duly rendered verdict being wrongfully obtained, and authorize gateway relief.

II. DISCUSSION

17. As detailed in Petitioner's writ of error **coram nobis**, eighteen months after the underlying offense, Petitioner was arrested only after Det. Scarcella received a factitious anonymous tip, who was not produced at trial; did not have person knowledge of the underlying offense and obtained this information through another unidentified source and thereby serve as a basis to invoke **falsus uno**. This doctrine precisely called the validity and omitted issue into question that had a likelihood of success in getting the fruits suppressed. Despite the factual predicate of the claim is directed at the District Attorney's failure to discharge its obligation disclosing **Brady** material, the omission had a greater likelihood of success highlighting

3

Det. Scarcella's pattern of "corruptable investigative" practices that inexcusably was not argued and brief by appellate counsel which meant the end of the case constitute "professional objective performance" in violation of **Kimmelman v. Morrision**, 477 U.S. 365, 383 (1986) (A 'single colorable mistake' by counsel failure to suppress may constitute ineffectiveness).

18. The teaching of **Lynch v. Dolce**, 789 F.3d 303, (2nd Cir. 2015) in instructive. There, the Second Circuit held that, winning a successful deprivation of appellate counsel entails "strategic choices made after thorough investigation reviewing controlling precedents in a highly charged analogous context that could have led to Petitioner's full exoneration is essential on a finding of appellate counsel's ineptitude." Yet, despite honoring these principles, appellate counsel failed to raise trial counsel's omission challenging Det. Scarcella's pattern of "corruptive practices." Had trial counsel's challenged been leveled at that seizure, it would have, as a matter of federal law, resulted in suppression of Petitioner's arrest directly connected to an anonymous tip that otherwise did not exist amplified by the Second Department's approval in **People v. Drayton**, 172 A.D.2d 849, 569 N.Y.S.2d 212 (2nd Dep't 1991) (most importantly, this Court held that, inadmissible double hearsay anonymous tip lacked indidica reliability and did not raise to the level for DETECTIVE LOUIS SCARCELLA to effectuate probable cause, and strenuously announced this practice will not be replicated placing the bench and practitioners alike on notice to this particular detective misconduct).

4

19. As fully discussed below, Petitioner's writ of error **coram nobis**, Respondent simply did not even acknowledge **Drayton**, infected violation at all and instead responded as if **Drayton** and its progeny did not even exist. It is probable clear why Respondent has repeatedly taking the position contrary to the Second Department authority in the mist of the level of corruption that now cast a general pall over Petitioner's conviction. Under these principles, there is simply no basis for the Appellate Division's denial, that at the very minimum compelled **de novo** relief.

20. Finally, there is simply no basis for the Appellate Division's determination. As Petitioner is undeniably entitled to suppression followed by Supreme Court's confession cases, and appellate counsel omitted the very ground that would have guaranteed success of that motion. How can an attorney be deemed effective when he makes no motion to suppress at the same time inexplicably omits the sole ground that would have averted a wrongful conviction?[2] Neither the CRU nor the Appellate Division attempted to distinguish **Drayton**, and there is no justification to conclude a Fourth Amendment theory would not have succeed on the suppression premise on Det. Scarcella's pattern of "corruptable investigative" practices.

---

[2] Recounting the Court of Appeals paramount importance to the accused, effective assistance of counsel at a suppression hearing is of great significant since the denial of a motion to suppress evidence is a "critical step in a criminal prosecution" and "it may often spell the difference between conviction or acquittal of the evidence seized may constitute the principle, if not the only means of establishing guilt." See generally **People v. Bilal**, 27 N.Y.3d 961, 962, 29 N.Y.S.3d 863 (2016).

21. As a corollary to this debacle so far, the CRU vacated seven cases linked to Det. Scarcella.   Yet erected an insurmountable fortified barrier access to wide-spread false and misleading investigatory practices at their own peril.   See, **Wearry v. Cain**, 136 S.Ct. 1002 (2016).   Here, the Supreme Court in a (pre curiam) decision called upon all State courts of competent jurisdiction on the proper evaluation conducting a viable **Brady** violation is significantly less adverse to defendants during post-collateral litigation.   The **Wearry** Court held that, Louisiana court's denial post-conviction **Brady** claim deserve a better outcome within the ambit of settled principle of State and Federal constitutional law.   In the same constitutional vein, the CRU's mounting reversals related to Det. Scarcella "duplicated confessions" was suppressed and materially favorable to Petitioner during his direct and post-collateral pleading and deliberately suppressed in contravene to **Wearry**.

22. Furthermore, the CRU has exhibit such defiance casting light on the proper resolution was first entertained by the Supreme Court Justice Desmond Green studied decision subpoenaing CRU's record **in camera**, to safeguard the integrity of the adversary pleading.

23. In that unreported decision, Judge Judge Green expressed with the level of dismay where Detective Scarcella add more credibility to the lies he told by virtue of orchestrating an elaborated scheme to defraud the Court, by eliciting false confession that made its way in the trier of fact deliberative

6

process, and thus deserving nothing more than vacatur of the conviction. See, ___ Misc.3d ___ (citation omitted).

24. Running parallel to another case study decision emerged from Supreme Court Justice Ruth Shillingford, who exercised her discretion ordering a search of the prosecutor's e-mail which showed a disturbing pattern of prosecutorial misconduct.

25. In that case, prosecutor Marie-Claude Wrenn repeated denials under oath a material-witness warrant did not exist turned up after a court-order located a material-witness order exist in December 2004. Judge Shillingford swiftly set aside the conviction. See, __ Misc.3d __ (citation omitted) (attached and marked as Exhibit B).

26. Under our federal counterpart, United District Judge Allyne Ross issued a scathing report, ruling that if the civil suit went to trial, Detective Rienzo's disciplinary record was fair game (attached and marked as Exhibit C).

## PRODUCTION OF ALL DUPLICATE CONFESSION

27. Based on the foregoing, this gateway civil litigation requires the court to exercise its discretion that would only sharpen the prejudice demanding CRU to provide this Court its manifest of all duplicate confessions in its possession and untrustworthiness by Det. Scarcella's pattern of "corruptable investigative" practice and such defiance mandate sanction. The CRU's inaction is cardinal sin, this abuse was implicitly exercised during Petitioner's state court proceeding as a tactical advantage to exercise an element of denialability preclude appropriate action by the court and need not be repeated

in the gateway exploratory hearing. See, **Fuentes v. Griffin**, __
F.3d __ 2016 WL 3854206 (2nd Cir. 2016). There, as Justice
Wesley dissenting advisory opinion cautioned: "If Respondent
intentional excluded favorable evidence in which drew the
majority ire sanctions should be deferred." Id. 2016 WL 3854206
at n.7.

## CONSTITUTIONAL VIOLATION

28. On appeal, Petitioner challenge the Court of Appeals
denial his writ of error **coram nobis** without issuing an opinion.
The argument or theories advance entails denial of effective
assistance of appellate counsel's failure to raise trial counsel
omission getting the fruits suppressed, and the Second Circuit
Court of Appeals mandate called into question the omitted issue
so as to explain appellate counsel's omission in accord with
**Morales v. United States**, 651 Fed. Appx. 1 (2nd Cir. 2016)
(summary order). The potential substantial prejudice to
Petitioner inhered in the proceeding that followed the Second
Circuit's mandate. This raised serious question about the
correctness of the state court's judgment. The privilege at risk
was the chance to brief the Circuit on the issue the Second
Department itself recognized as potentially dispositive. The
facts of this case demonstrate, a lack of assistant not only
could have, but did in fact result in the irrevocable loss of
that privilege.

29. The second theory entails the conviction was obtained in
violation of the Sixth Amendment right to counsel failure to

8

investigate the law and facts of the case, as no legitimate explanation to suppress Det. Scarcella's "corruptable investigative" practice, and had trial counsel move to suppress no conviction would have been obtained.

30. The Fourteenth Amendment encroachment is solely direct at Kings County CRU and certainly all Kings County prosecutor's involving this case, including their supervisors that were knowledgeable of serious errors in Petitioner's arrest, and for the first time disclosed during former DA Charles Haynes 2013-13 re-election exposed said impropriety, and has failed to explain under what theory it reasonably believe it had to divulge it after all Petitioner's appeals had expired remain unanswered, and just for "political correctness," infringed on Petitioner's right to present a defense within the ambit of due process.

31. Accordingly, the CRU withholding favorable evidence for 31 years which led to a wrongful conviction as no weighty interest could obviate prosecuting a case for a crime Petitioner did not commit.

## REQUIRED INFORMATION

32. Petitioner does not have any future sentence to serve after completion the sentence imposed by the judgment under attack.

33. Petitioner was represented by Joseph Giannini, Esq., located at 59 Schermerhorn Street, Brooklyn, New York 11201. On appeal, Alani Golanski, Esq., Legal Aid Society, 199 Water Street, New York, NY 10038-3526.

9

**WHEREFORE**, Petitioner Calvin Lee prays this Court:

I. Issue a writ of habeas corpus to be brought to the end that he may be discharge from his unconstitutional confinement;

II. Permit Petitioner, who is indigent, to proceed without prepayment of cost or fee;

III. Require Respondent to furnish a transcript of the entire trial, post-collateral pleading and duplicate confessions known to the CRU pursuant to Rule 5 Governing §2254 Cases in the United States District Court.

IV. Grant such other and further relief as may be just and proper.

I declare under the penalty of perjury, pursuant to 28 U.S.C. §1746, that the following is true and correct and that this petition for a writ of **habeas corpus** was placed in the prison mailing system on 2̲3̲ December, 2016

## CONCLUSION

For the stated reasons discussed above, a gateway hearing should be GRANTED in its entirety.

Dated: 28 December 2016
        Ossining New York

                              Respectfully submitted,


                              Calvin Lee
                              Appearing Pro Se
                              Sing Sing Corr. Fac.
                              354 Hunter Street
                              Ossining, NY 10562

# State of New York
# Court of Appeals

BEFORE:  HON. MICHAEL J. GARCIA
Associate Judge

---

THE PEOPLE OF THE STATE OF NEW YORK,

                                        Respondent,

   -against-

CALVIN LEE,

                                        Appellant.

---

**ORDER
DENYING
LEAVE**

 

Appellant having applied for leave to appeal to this Court pursuant to Criminal Procedure

Law § 460.20 from an order in the above-captioned case;*

UPON the papers filed and due deliberation, it is

ORDERED that the application is denied.

Dated: December 6, 2016

at Albany, New York

 

Associate Judge

*Description of Order:  Order of the Supreme Court, Appellate Division, Second Department,
entered September 28, 2016, denying defendant's application for a writ of error coram nobis.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------X
                                    :
CALVIN LEE,                         :
                                    :
                    Petitioner,     :        PETITION
                                    :
        -against-                   :        ___ Civ. ___
                                    :
MICHAEL CAPRA, Superintendent,      :
Sing Sing Correctional Facility,    :
                                    :
                    Respondent.     :
                                    :
-----------------------------------X


MR. CALVIN LEE'S EXHIBIT A



**DISTRICT ATTORNEY**
**KINGS COUNTY**
350 JAY STREET
BROOKLYN, NY 11201-2908
(718) 250-2000
WWW.BROOKLYNDA.ORG

**Kenneth P. Thompson**
District Attorney

March 18, 2016

Calvin Lee
Inmate Number 86-A-6571
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562-5498

Re:   FOIL Request
      People v. Smith & Lee
      Kings County Ind. No. 2183/86

Mr. Lee:

I am writing in response to your request for records pursuant to the Freedom of Information Law (FOIL), dated March 14, 2016. Your request cannot be fulfilled at this time because the above-referenced case is now the subject of an open and ongoing investigation that is being conducted by this Office's Conviction Review Unit. See Public Officers Law § 87(2)(e)(i); Legal Aid Society v. New York City Police Department, 274 A.D.2d 207 (1st Dep't 2000); DeLuca v. New York City Police Department, 261 A.D.2d 140 (1st Dep't 1999); Matter of Pittari v. Pirro, 258 A.D.2d 202 (2d Dep't 1999). You may re-submit your request once the investigation has been concluded, provided that no post-conviction litigation in this matter is pending at that time. See Whitley v. New York County District Attorney's Office, 101 A.D. 3d 455 (1st Dep't 2012); Moreno v. New York County District Attorney's Office, 38 A.D.3d 358 (1st Dep't 2007) (each holding that disclosure of the requested documents would have interfered with petitioner's then-pending criminal appeal and any subsequent proceedings in the underlying criminal case).

You may appeal these determinations within thirty days of the date of this letter by contacting Morgan Dennehy, Esq., FOIL Appeals Officer, at the above address.

Sincerely,

Douglas O'Connell
Paralegal Specialist
FOIL Records Access Officer

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------X
                                    :
CALVIN LEE,                         :
                                    :
                  Petitioner,       :        PETITION
                                    :
         -against-                  :        ___ Civ. ___
                                    :
MICHAEL CAPRA, Superintendent,      :
Sing Sing Correctional Facility,    :
                                    :
                  Respondent.       :
                                    :
-----------------------------------X
```

<u>MR. CALVIN LEE'S EXHIBIT B</u>

New York Post, Tuesday, September 1, 2015 • nypost.com



# Slay verdict KO'd, prosecutor quits

By LEONICA VALENTINE and LIA EUSTACHEWICH

A Brooklyn man who spent 24 years behind bars on a murder conviction was released from Rikers Island Monday night — hours after a veteran prosecutor resigned over false statements she made about evidence in his case, law-enforcement sources said.

Ruddy Quezada, 53, had appealed his 1993 conviction in a drive-by shooting, arguing his trial attorney never knew a witness who fingered him as ordering the 1991 murder had been detained by prosecutors for days prior to testifying.

Such detainments were in hotel rooms that came to known as "The Hotel Hynes," named for then-DA Charles Hynes.

At a hearing in May, prosecutor Marie-Claude Wrenn claimed under oath she didn't find the material-witness warrant ordering Sixto Salcedo to be detained until 2011.

But in a bombshell e-mail discovered last week — after a court-ordered search of her e-mails dating back to 2003 — it surfaced that Wrenn had known of the warrant's whereabouts years earlier.

"I found a material witness order for Salcedo, who was too afraid to testify, in the files. I put it on your desk," Wrenn, 76, had written to her supervisor, Jane Meyers, in December 2004.

The two never breathed a word of the warrant when Salcedo recanted his testimony at a 2006 hearing on Quezada's appeal.

Salcedo maintained he was threatened by Hynes' investigators to implicate



**HE'S OUT . . . SO IS SHE:** Disgraced prosecutor Marie-Claude Wrenn (above) in Brooklyn Monday before Ruddy Quezada was released from Rikers into daughter Amanda's arms (left).

Quezada in the drive-by shooting of José Rosado.

Quezada was convicted in 1993 of ordering the murder and was sentenced to 25 years to life.

Wrenn, a prosecutor for nearly 20 years, recently told investigators she couldn't remember writing the e-mail.

The damning discovery prompted Brooklyn Supreme Court Justice Ruth Shillingford to vacate Quezada's conviction.

He was sprung from Rikers Island Monday night.

"Everything is good. I have my family," he said, smiling as he walked out of jail.

His only child, Amanda Quezada, 24, hadn't seen him since she was 8, in jail, and cried what she called "tears of joy."

"It's a blessing," she said.

Quezada's lawyer, David Shanies, said he was "shocked and disturbed by the pervasive prosecutorial misconduct this case revealed."

*With Emily Saul and Amanda Woods*

---

# FREE FROM 24-YEAR JAIL HELL

Kristy Leibowitz

---

# Ky. gay-nay clerk nixed

MOREHEAD, Ky. — The US Supreme Court on Monday ruled against the Kentucky county clerk who has refused to issue same-sex marriage licenses, and the clerk will arrive at work Tuesday morning to face her moment of truth.

Rowan County Clerk Kim Davis will have to choose whether to issue marriage licenses, defying her Christian beliefs, or continue to refuse them, defying a federal judge

who could fine or jail her.

"She's going to have to think and pray about her decision overnight. She certainly understands the consequences either way," her lawyer said Monday.

Davis' lawyers filed a last-ditch appeal to the Supreme Court on Friday. Justice Elena Kagan, who oversees the 6th District, referred Davis' request to the full court, which denied the stay without comment. *AP*

---

# Jew-hating killer guilty

OLATHE, Kan. — The man who admitted killing three people at two suburban Kansas City Jewish sites gave jurors a Nazi salute Monday after they convicted him of murder, which he said would allow him to "die a martyr."

It took the jury of seven men and five women just over two hours to find Frazier Glenn Miller Jr. guilty of one count of capital murder, three counts of attempted murder

and assault and weapons charges.

The sentencing proceedings were expected to begin Tuesday. Miller, 74, of Aurora, Mo., could get the death sentence for the April 2014 shootings at two Jewish sites in Overland Park, Kan.

Although he admitted to the killings, he had pleaded not guilty, saying it was his duty to stop what he called genocide against the white race. None of his victims was Jewish. *AP*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------X
                                    :
CALVIN LEE,                         :
                                    :
                    Petitioner,     :          PETITION
                                    :
          -against-                 :          ___ Civ. ___
                                    :
MICHAEL CAPRA, Superintendent,      :
Sing Sing Correctional Facility,    :
                                    :
                    Respondent.     :
                                    :
------------------------------------X


## MR. CALVIN LEE'S EXHIBIT C

# Gets $2M for 4 yrs. in bad conviction

A HOMELESS CONSTRUCTION worker who served four years in prison before he was cleared by the Manhattan district attorney's office conviction review unit will receive $2 million from the city to settle his federal lawsuit, the Daily News has learned.

Martin Nnodimele alleged that NYPD Detectives Donald DeRienzo — the son of a former police deputy commissioner — and Edward Garrity had railroaded him by fabricating evidence and suppressing police reports that showed he may not be the suspect responsible for a string of commercial

# EXCLUSIVE

robberies. Nnodimele's suit alleged that after he was arrested at the Bellevue Men's Shelter, the detectives falsely claimed he had admitted he was the robber depicted in a surveillance photo.

Manhattan District Attorney Cy Vance Jr.'s review unit determined that the proof at Nnodimele's trial had been compromised and sought a dismissal of the conviction. He had been sentenced to 10 years in prison.

Federal Judge Allyne Ross ruled that if the civil suit went to trial, DeRienzo's disciplinary record was fair game.

**Martin Nnodimele (r.) was cleared by Manhattan DA's office in string of robberies.**

**John Marzulli**